UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGEL M. RODRIGUEZ, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :   No. 3:04CV00927 (DJS) |
| | : |
| BISSELL RIDGE, LLC and | : |
| B. NICOLO CARPENTRY, INC., | : |
| | : |
|     Defendants. | : |

**MEMORANDUM OF DECISION**

On May 31, 2004, plaintiff Angel M. Rodriguez ("Rodriguez"), filed a complaint alleging that the defendants, Bissell Ridge, LLC ("Bissell Ridge"), and B. Nicolo Carpentry, Inc. ("Nicolo Carpentry"), breached a duty to Rodriguez in failing to exercise reasonable care in the design, construction, and utilization of building materials so as to prevent the creation of an unreasonable and unsafe work environment. (Dkt. # 1). Rodriguez further alleges the injuries he sustained on June 27, 2002 ("the Incident"), were the direct and proximate result of the defendants' failure to exercise care or take reasonable steps to prevent harm to invitees on the construction site. Id. On October 27, 2004, Bissell Ridge filed a cross claim for indemnification (dkt. # 8) against Nicolo Carpentry. On September 1, 2005, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Bissell Ridge filed a motion for summary judgment on both Rodriguez's complaint and Bissell Ridge's cross claim for indemnification. (Dkt. # 33). For the reasons set forth herein, Bissell Ridge's motion (dkt. # 33) is **DENIED**.

## I.  FACTS

Bissell Ridge, LLC ("Bissell Ridge"), is a land development company whose principal is James Celio ("Celio").  Celio owns several other companies and has been in the land development business for twenty-nine (29) years.  One of Celio's businesses is a real estate company, through which he sells houses.  Approximately twenty-five percent of the houses sold are new construction.  Since its formation in 1998, Bissell Ridge has been involved in the development of thirteen residential lots and the construction of two houses.

In December of 2000, Celio purchased the land at 395 Wall Street, Hebron, Connecticut ("the Property"), to construct a house for his son.  Before construction began, however, Celio's son decided to build a house at a different location.  Consequently, Celio secured a construction mortgage to build a house on the Property and decided that he would sell the residence through his real estate business.  Also, prior to construction, Celio negotiated with the Connecticut Department of Transportation and the State Traffic Commission to secure a driveway permit for the Property.

Bissell Ridge hired B. Nicolo Carpentry, Inc. ("Nicolo Carpentry"), to aid in the construction of the house at the Property.  Celio knew Bart Nicolo ("Nicolo"), the principal of Nicolo Carpentry, since childhood.  Nicolo was a past business client of Celio.  Indeed, since the late 1980's or early 1990's, Celio marketed approximately sixty to seventy homes built by Nicolo Carpentry.  At his deposition Celio testified that he had always been satisfied with Nicolo Carpentry's product.  (Dkt. # 33, Celio Dep., Ex. 1 at 9:11–12).

Bissell Ridge and Nicolo Carpentry dispute who acted as the general contractor at the Property and who was in charge of the day-to-day construction.  According to Nicolo, he was paid $8,000 to "help [Celio] oversee this project . . . [but, Nicolo] did not have full responsibility

2

of overseeing the project." (Dkt. # 37, Nicolo Dep., Ex. 1 at 19:20–22). Celio disputes this and asserts that Bissell Ridge relied on Nicolo Carpentry to perform whatever work was necessary in the construction of the house. (Dkt. # 33, Celio Aff., Ex. 2 ¶ 11). Also, the blueprints for the house were from a stock plan that Nicolo Carpentry had built from in the past.

In addition to hiring Nicolo Carpentry, Celio hired the electrician, McGill Electrical, and the excavator, Ray Excavation. Celio also hired an engineer and tree removal service to prepare the site for construction. Nicolo testified that he is unsure whether he or Celio hired JR Kakely & Sons, Inc. ("Kakely"), the drywall vendor. (Dkt. #37, Nicolo Dep., Ex. 1 at 25:1–4). But, the drywall was billed directly to Bissell Ridge. (Dkt. # 37, Celio Dep., Ex. 2 at 13:2–6). Celio testified that he was familiar with most of the contractors working on the Property including Kakely, who had worked with Nicolo Carpentry on previous projects. No written contracts were executed between any contractors regarding construction of the new house on the Property, including Bissell Ridge and Nicolo Carpentry. (dkt. # 33, Celio Dep., Ex. 1 at 10:20–12:9).

Construction at the Property began in March or April of 2002. During construction, Nicolo Carpentry placed orders for building materials and, in some instances, the suppliers billed Bissell Ridge directly. (Dkt. # 33, Celio Dep., Ex. 1 at 12:13–21). Materials billed directly to Bissell Ridge included: lumber, siding materials, drywall, and concrete. Celio also made most decisions regarding the color and specifications of materials such as siding. On occasion, Nicolo Carpentry paid for the building supplies and then received a reimbursement from Bissell Ridge. Id.

It is unclear from the record who was in control of the daily work performed in the construction of the new house at the Property. Celio testified that he has only observed the construction of new houses and served as a liaison between customers and contractors.[1]

---

[1] Celio himself has never built a house. (Dkt. # 33, Celio Dep., Ex. 1 at 24:12–13).

3

Conversely, Nicolo had been in the house construction business for many years. The parties dispute whether Nicolo was completely responsible for oversight of the project. (Dkt. # 37, Nicolo Dep., Ex. 1 at 19:21–23:24). During construction, Celio visited the Property two or three times per week to "check progress, check if people showed up, look at what was going on, if it was in line of the specifications of what we had talked about, what my plan was for the house, if they were staying with the blueprints, [and] on occasion cleanup." (Dkt. # 33, Celio Dep., Ex. 1 at 15:24–16:9).

In May 2002, Nicolo constructed a temporary staircase between the first and second floor of the residential structure at the Property to allow access to the second floor of the structure for construction purposes. (Dkt. # 33, Celio Dep., Ex. 1 at 16:15–22). According to Nicolo, a temporary staircase is typical of something a framing contractor on a building site would construct. Nicolo had built "thousands" of these temporary staircases during the course of his employment, (dkt. # 37, Nicolo Dep., Ex. 1 at 20:13–15), and, according to Nicolo, these staircases were always constructed in the same manner. Prior to the Incident, Celio had used temporary staircases constructed by Nicolo on other properties. (Dkt. # 33, Celio Dep., Ex. 1 at 16:23-17:11).

Celio claims that he did not witness the construction of the temporary staircase at the Property, nor did he have any input into the manner in which the temporary staircase was constructed. (Dkt. # 33, Celio Aff., Ex. 2 at ¶¶ 8, 9). He did not speak to Nicolo about the staircase prior to the Incident. (Dkt. # 33, Celio Dep., Ex. 1 at 17:4–7). He did have occasion to use the temporary staircase constructed by Nicolo at the Property. (Dkt. # 33, Celio Dep., Ex. 1 at 16:23–25). During these occasions he did not experience any problems with the staircase, nor

did he notice anything different about this particular temporary staircase compared to other temporary staircases he had seen. (Dkt. # 33, Celio Dep., Ex. 1 at 17:1–11).

On June 27, 2002, Rodriguez, an employee of Kakely, delivered drywall to the Property in the regular course of his employment and utilized the temporary staircase. He entered the residential structure and inspected the second floor to ascertain the amount of drywall that would be needed. Upon descending the temporary staircase, Rodriguez alleges that the staircase collapsed under him and caused him to sustain injuries.

On the afternoon of the Incident, a Kakely employee left a voicemail for Celio informing him of the Incident. In response to the voicemail, Celio contacted a manager at Kakely to find out the extent of Rodriguez's injuries. (Dkt. # 35, Celio Dep., Ex. 1 at 18:2–11). Celio then called Nicolo's house. Nicolo's wife answered the phone and Celio asked her to have Nicolo further investigate the details of the Incident. (Dkt. # 35, Celio Dep., Ex. 1 at 18:19–25). Celio also called his insurance carrier to report the Incident because "it was the right thing to do, there had been an event and I should report it." (Dkt. # 35, Celio Dep., Ex. 1 at 22:2–14). Later on the day of the incident, Celio visited the site and noticed that the stairs were back in place and the drywall had been delivered. Celio inspected and used the staircase and found nothing amiss about its construction or structural integrity.

## II. DISCUSSION

Rodriguez claims that Bissell Ridge and Nicolo Carpentry owed him a duty of care and that their breach of that duty caused him to sustain injuries. Bissell Ridge argues that it was under no such duty of care. Bissell Ridge further claims that it is entitled to indemnification from Nicolo Carpentry because, according to Bissell Ridge, Nicolo Carpentry's negligent construction of the staircase was the direct and primary cause of Rodriguez's injuries. Bissell

Ridge now seeks summary judgment on both Rodriguez's negligence claim and its claim for indemnification against Nicolo Carpentry. Because there are genuine issues of material fact, Bissell Ridge's motion for summary judgment on both the negligence claim and the indemnification claim is denied.

## A.  STANDARD OF REVIEW

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319–20 (2d Cir. 1975)). A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

B. NEGLIGENCE CLAIM

Rodriguez brings a negligence claim against the defendants. He alleges that the defendants owed him "a duty to exercise reasonable care in the design, construction and utilization of building materials on or at the [Property], so as to provide a safe environment." (Dkt. # 1). Additionally, Rodriguez alleges that "the [d]efendants failed to exercise ordinary care in the design, construction and utilization of building materials at the [Property], creating an unreasonable, unsafe and dangerous condition." Id. Accordingly, Rodriguez claims that the defendants' breach of these duties proximately caused his injuries. Id. Because Bissell Ridge cannot show that it did not owe Rodriguez a duty of care, summary judgment regarding Rodriguez's negligence claim is inappropriate.

"To recover on a theory of negligence, the plaintiff must establish that the defendant owed a duty [of care to the plaintiff] and breached that duty." Rangel v. Parkhurt, 64 Conn. App. 372, 378 (2001) (citing Leavenworth v. Mathes, 38 Conn. App. 476, 479 (1995)). Whether a legal duty exists is a question of law for the court to determine, and only if such a duty is found to exist does the trier of fact then determine whether the duty has been breached. Gazo v. City of Stamford, 255 Conn. 245, 250 (2001). The Supreme Court of Connecticut has applied a two-pronged test for the existence of a legal duty that evaluates: (1) whether the harm was foreseeable, and (2) whether public policy dictates that such a duty should exist. Id.

The foreseeability prong for the existence of a legal duty entails "a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result . . . ." Gazo, 255 Conn. at 250; see also Lombard v. Peters, 252 Conn. 623, 633 (2000) ("[T]he ultimate test of the existence of the duty to use care is found in the foreseeability that the

7

harm may result if it is not exercised . . . . "). If recovery is sought on the ground that the employer ought to have adopted certain precautionary measures for the purpose of preventing the injury complained of, the action will fail, unless that plaintiff can at least show that, in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen, if such precautionary measures were omitted. Hayes v. Torrington Water Co., 88 Conn. 609, 610 (1914).

The public policy prong for the existence of a legal duty entails "a determination . . . of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case . . . ." Gazo, 255 Conn. at 250. In considering whether public policy suggests the existence of a legal duty between a plaintiff and a defendant the following four factors are considered: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." Monk v. Temple George Assocs. 273 Conn. 108, 118 (2005).

1. GENERAL NON-LIABILTY RULE

Bissell Ridge claims that it is entitled to summary judgment on Rodriguez's negligence claim pursuant to the general rule that a general contractor is not liable for the negligence of its independent contractor. Nicolo Carpentry and Rodriguez contend that summary judgment should be denied because this case falls under one of the exceptions to this rule in that there is a genuine issue of material fact as to whether Bissell Ridge exercised control over the construction at the Property. Because there is a genuine issue of material fact regarding one of the exceptions

to the general non-liability rule, summary judgment regarding Rodriguez's negligence claim is inappropriate.

Under the general rule, an employer is not liable for the negligence of its independent contractors. Douglass v. Peck & Lines Co., 89 Conn. 622, 627 (1915). The rule also applies to general contractors as employers of subcontractors. Id. The general rule states that where the owner of a premises employs an independent contractor to perform work on the premises, the contractor – not the owner, is liable for any losses resulting from negligence in the performance of the work until the work has been completed, turned over to, and accepted by the owner. Darling v. Burrone Bros., Inc., 162 Conn. 187, 196 (1972) (citing Wright v. Coe & Anderson, Inc., 156 Conn. 145, 151 (1968)); Mann v. Leake & Nelson Co., 132 Conn. 251, 254 (1945); See Lawrence v. Shipman, 1873 Conn. WL 1389, at *2 (Conn. May 25, 1873). The rationale behind this rule is that the employer generally has no power over the manner in which the contracted work is to be performed, thus, it is understood that it is the contractor's duty to prevent, bear, and distribute the risk. Pelletier v. Sordoni/Skanska Constr. Co., 264 Conn. 509, 517–18 (2003).

There are several exceptions to the rule that general contractors are not liable for the negligence of their independent contractors. The general rule of non-liability does not apply: (1) if the work contracted for is illegal; (2) if the work may cause a nuisance; (3) if the work is intrinsically dangerous; (4) if the nature of the work is calculated to result in injury to others; (5) if the general contractor negligently employed an incompetent or untrustworthy independent contractor; (6) if in the contract for the work to be performed the general contractor reserved general control over the independent contractor or his servants; (7) if the general contractor reserved control over the manner of doing the work contracted for; (8) if in the progress of the

work the general contractor assumes control or interferes with the work; or (9) if he is under a legal duty to see that the work is properly performed. Pelletier, 264 Conn. at 518.

A general contractor may also subject himself to liability if he retains control over the specific manner and method of performing the work engaged in by the injured employee of the independent contractor. Norwalk Gaslight Co. v. Borough of Norwalk, 28 A. 32, 38 (1893). The mere right to control or interfere with the work being performed is not enough to expose the contractor or employer to liability. Id. The employer may retain the power to "order the work stopped or resumed to inspect its progress or to receive reports, make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations," without subjecting himself to liability. See Trainor v. Frank Mercede & Sons, Inc., 152 Conn. 364, 368 (1964); Rest. (Second) of Torts § 414, cmt. c.

When the evidence is such that a fair and reasonable person could come to but one conclusion as to who was in control of the premises at the time of the incident, the question is one for the court. Johnson v. Pulidy, 116 Conn. 443, 445 (1933). But, if honest and reasonable persons could differ as to who had control of the premises at the time of the incident, then the issue should be presented to the jury for determination. Id.

In this case, whether Bissell Ridge is considered the employer of a general contractor or the general contractor itself is irrelevant because the same rule of non-liability, along with its exceptions, applies to both general contractors and employers. Pelletier, 264 Conn. 518; Douglass, 89 Conn. at 627. Thus, unless this case falls within one of the exceptions to the general rule of non-liability, Bissell Ridge cannot be held liable for the injury of an employee of a subcontractor. See Douglass, 89 Conn. at 627.

The first four exceptions to the general rule of non-liability involve the nature of the work performed. They are: (1) whether the work contracted for is illegal; (2) whether the work may cause a nuisance; (3) whether the work is intrinsically dangerous; and (4) whether the nature of the work is calculated to result in injury to others. Pelletier, 264 Conn. at 518. Courts have not reasoned that the construction of a house falls under any of these four exceptions. See Anne v. D & D Builders, LLC, 36 Conn. L. Rptr. 587 (Conn. Super. Ct. Mar. 9, 2004). The construction of a house on a parcel of land is neither considered illegal, nor is it reasonably calculated to cause a nuisance. Furthermore, constructing a house is not intrinsically dangerous. The Supreme Court of Errors of Connecticut has reasoned that work that is intrinsically dangerous is analogous to the operation of rock-blasting with the use of dynamite, gunpowder, or other explosives because it is likely to cause injury to others, no matter how carefully done. Norwalk Gaslight, 28 A. at 35; Alexander v. R.A. Sherman's Sons Co., 85 A. 514, 514–15 (1912). The intrinsically dangerous exception was later expanded to include pile driving. Caporale v. C.W. Blakeslee & Sons, Inc., 149 Conn. 79, 85 (1961). Building a house is not calculated to result in injury to others.

A contractor or employer may also be held liable to the employee of an independent contractor if the contractee negligently employed an incompetent or untrustworthy contractor. Pelletier, 264 Conn. at 518. An employer must exercise due and reasonable care in the selection of a contractor. Norwalk Gaslight, 28 A. at 39–40. In this case, the evidence does not show that Celio negligently employed an untrustworthy or incompetent contractor when it hired Nicolo Carpentry. Nicolo was one of Celio's clients for a significant period of time. Celio had sold between sixty and seventy houses constructed by Nicolo Carpentry and Celio had always been satisfied with Nicolo Carpentry's product. (Dkt. # 33, Celio Dep., Ex. 1 at 9:5–12). Because

11

Celio did not fail to exercise due or reasonable care in selecting a contractor, Bissell Ridge is not liable to Rodriguez for a failure to reasonably select a competent contractor.

Three further exceptions to the general rule of non-liability involve the exercise of control over the work being performed at a premises. See Pelletier, 264 Conn. at 518. These exceptions have been articulated by the Supreme Court of Connecticut as the following: (1) if in the contract for the work to be performed the contractee reserved general control over the contractor or his servants; (2) if the contractee reserved control over the manner of doing the work contracted for; and (3) if in the progress of the work the contractee assumes control or interferes with the work. In this case, there are no written contracts and thus no written provision(s) that state whether Bissell Ridge reserved control over the work to be performed by Nicolo Carpentry.

There is, however, conflicting evidence as to whether Bissell Ridge did, in fact, assume control over the work performed by Nicolo Carpentry or interfere with the work being performed by Nicolo Carpentry. See (Dkt. # 33, Celio Aff., Ex. 2 at ¶¶ 8, 9); (Dkt. # 37, Nicolo Dep., Ex. 1 at 19:21–23:24). Bissell Ridge claims that Celio merely visited the Property two to three times a week over the course of construction in a supervisory capacity. (Dkt. # 33, Celio Dep., Ex. 1 at 15:24–16:9) But, Nicolo Carpentry claims that these visits went beyond the supervisory role a landowner is entitled to without subjecting himself or herself to liability. Further, the dispute over: (1) who hired Kakely; (2) where bills for supplies went; and (3) Celio's call to the insurance company regarding the Incident show that reasonable jurors could differ over who was in control. Because there is a genuine issue of material fact regarding the control exception to the general non-liability rule of a general contractor, summary judgment is inappropriate.

## 2. NON-DELEGABLE DUTY DOCTRINE

Nicolo Carpentry raises the non-delegable duty doctrine as another exception to the non-liability of a general contractor rule. (Dkt. # 37). Nicolo Carpentry claims that Bissell Ridge, as the owner of the Property, owed Rodriguez a duty of care, regardless of any negligence on the part of Bissell Ridge. Because Bissell Ridge owed Rodriguez a duty of care under the non-delegable duty rule, Bissell Ridge is not entitled to summary judgment on Rodriguez's negligence claim.

A landowner has a non-delegable duty to exercise care for the safety of its invitees. Smith v. Town of Greenwich, 278 Conn. 428, 458 (2006); See Gazo, 255 Conn. at 257 (dictum). This exception has created a vicarious liability situation for landowners where liability for fault may be placed on an additional, albeit innocent defendant. Smith, 278 Conn. at 461. Therefore, while a landowner may contract for the performance of a non-delegable duty, he or she may not contract out his or her ultimate liability. Gazo, 255 Conn. at 255.

The Supreme Court of Connecticut recently reasoned that "[t]he very essence of the non-delegable duty doctrine, however, is that the property owner is fully liable to a plaintiff who has been injured as a result of a breach of a non-delegable duty regardless of whether the property owner actually is at fault or the degree of fault." Smith, 278 Conn. at 461. In this case, Bissell Ridge's ownership of the Property establishes that it had a duty of care to all invitees, including Rodriguez, because of the non-delegable duty rule. Therefore, summary judgment is inappropriate in this case as a trier of fact must find whether Bissell Ridge breached this duty and if said breach was the proximate cause of Rodriguez's injuries.

B.   INDEMNIFICATION CLAIM

Bissell Ridge also seeks summary judgment on its cross-claim for indemnification against Nicolo Carpentry.  Because there is a genuine issue of material fact regarding whether Bissell Ridge had control over the Property, summary judgment with respect to the indemnification claim is inappropriate.

In claim a for indemnity, one tort-feasor seeks to impose total liability on another tortfeasor.  Crotta v. Home Depot, Inc., 249 Conn. 634, 641 (1999).  Thus, the indemnitee seeks a reimbursement in full from the indemnitor, upon whom the primary negligence rests.  Id.  The Supreme Court of Connecticut has permitted recovery under indemnification, despite the absence of an express or implied agreement between joint tortfeasors to exercise reasonable care.  E.g., Kaplan v. Merberg Wrecking Corp., 152 Conn. at 411.

"Ordinarily there is no right of indemnity or contribution between joint tort-feasors."  Caviote v. Shea, 116 Conn. 569, 575 (1933).  But, if the indemnitee can prove that the negligence of which it is found chargeable was passive or secondary, while the indemnitor's negligence was active or primary, then the indemnitee may indemnify itself in relation to the indemnitor.  Kaplan, 152 Conn. at 415.  Consequently, the indemnitee is required to prove that: (1) the indemnitor was negligent; (2) the indemnitor's negligence, rather than the indemnitee's negligence, was the direct, immediate cause of the accident and the resulting injury; (3) the indemnitor was in control of the offending area to the exclusion of the indemnitee; and (4) the indemnitee did not know of the indemnitor's negligence, had no reason to know of the indemnitor's negligence, and could reasonably rely on the indemnitor not to be negligent.  Id. at 416.

14

As previously stated, when the evidence is such that a fair and reasonable person could come to but one conclusion as to who was in control of the premises at the time of the incident, the question is one for the court. Pulidy, 116 Conn. at 445. But, if honest and reasonable persons could differ as to who had control of the premises at the time of the incident, then the issue should be presented to the jury for determination. Id.

In this case, there is a genuine issue of material fact regarding whether Bissell Ridge or Nicolo Carpentry had exclusive control of the area at which the Incident occurred. As stated earlier, there is conflicting evidence as to whether Bissell Ridge did, in fact, assume control over the work performed by Nicolo Carpentry or interfere with the work being performed by Nicolo Carpentry. (Dkt. # 33, Celio Aff., Ex. 2 at ¶¶ 8, 9); (Dkt. # 37, Nicolo Dep., Ex. 1 at 19:21–23:24). Bissell Ridge is therefore precluded from summary judgment on its indemnification claim because honest and reasonable persons could differ as to who had exclusive control of the premises.

### III.  CONCLUSION

For the foregoing reasons defendant's motion for summary judgment (**dkt. # 33**) is **DENIED**. The parties shall file a joint trial memorandum on or before September 29, 2006.

So ordered this 10th day of August, 2006.

                                                                     /s/ DJS
                                                **DOMINIC J. SQUATRITO**
                                                **UNITED STATES DISTRICT JUDGE**